UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BRIAN P. HANNA, | ) | CASE NO. 1:07 CV 2147 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| NORTH CENTRAL CORRECTIONAL | ) | AND ORDER |
| INSTITUTION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On July 18, 2007, pro se plaintiff Brian P. Hanna filed this action under 42 U.S.C. §§ 1983, 1985 against the North Central Correctional Institution ("NCCI"), NCCI Warden Gordan Lane, NCCI Warden Rob Jeffreys, NCCI Deputy Warden John Coleman, Investigator Larry Yoder, NCCI Institutional Inspector Terry Knight, NCCI Unit Manager Administrator Kevin Woods, NCCI Unit Manager Larry Gaston, and NCCI Case Manager Ms. Maran. In the complaint, plaintiff alleges his wife was not permitted to visit him in prison upon his incarceration at NCCI in 2004 because she was on probation at the time. Mrs. Hanna subsequently filed for divorce from the plaintiff. Mr. Hanna seeks an order to stay state domestic relations court proceedings, an order for the parties to reconcile, an order permitting his spouse to visit him in prison, $1,000,000.00 in compensatory damages, and $ 1,000,000.00 in punitive damages.

Mr. Hanna filed an Amended Complaint on August 9, 2007. He seeks to add Knox County Judge Otho Eyster and Knox County Clerk of Courts Mary Jo Hawkins as defendants to this action. He claims Judge Eyster issued unfavorable rulings in the divorce case, and failed to order his wife to reconcile with him even though she did not file a response to his Motion. He contends Ms. Hawkins assisted Judge Ester in these actions by docketing his orders. Mr. Hanna seeks the same relief as stated in the original complaint.

### *Background*

Mr. Hanna claims he submitted an Informal Complaint Resolution ("ICR")form to then NCCI Warden Gordan Lane on March 14, 2004, reporting that his case manager, Ms. Maran, restricted his wife, Brenda Hanna, from visiting him. He states that the ICR was forwarded to Unit Manager Administrator Kevin Woods, who informed Mr. Hanna that because his wife was on probation from the State of Pennsylvania, she could not enter the institution as a visitor. He was informed that she could reapply for visits when she completed the term of her sentence. Mr. Hanna contends he was also told his wife posed a threat to the security of the institution. Mr. Hanna clearly disagreed with that assessment.

Mr. Hanna sent a grievance form to the Institutional Inspector. The Institutional Inspector also informed Mr. Hanna that his wife could submit a visiting application after she completed her term of probation. He stated that he had spoken to the Warden and it was determined that Mrs. Hanna's presence at the institution was a threat to the institution's security. An appeal of the denial of the grievance was filed with the Ohio Department of Rehabilitation and Correction Chief Inspector. He contends he received no answer to this appeal.

Mr. Hanna alleges he attempted to resolve the matter personally with Warden

Jeffreys. He sent copies of all grievances to Mr. Jeffreys, along with a letter from the family's pastor. Ms. Hanna and the pastor attempted to speak with the Warden and with Deputy Warden John Coleman by phone but not did not obtain the requested relief.

Mrs. Hanna filed a divorce action in the Knox County, Ohio Domestic Relations Court on November 15, 2006. Judge Eyster was assigned to hear the case. Mr. Hanna filed a Motion seeking conciliation which was denied. He attempted to have Judge Eyster removed from the case and that Motion was also denied. He then filed a Motion to stay the divorce proceedings on June 11, 2007. The status of that motion is unclear. The domestic relations matter is still pending.

Although the claims contained in the complaint are, at best, vague, it appears that Mr. Hanna blames the defendants for the break up of his marriage. He states that the prison officials "hender[ed] [sic] Plaintiff's rights to maintain his marriage and there is NO evidence to support Defendant's claim of threat to the security of the institution." (Compl. at 6.) He claims "there are other inmates similarly situated in not being able to visit family members, support persons and other significant persons." (Compl. at 7.) He contends that Judge Eyster and Ms. Hawkins "denied plaintiff's right to association to maintain a lawful and legal marriage under the 1st, 8th, and 14th amendments, by ruling against the plaintiff without any opposition from plaintiff's wife in any filings to the defendant's court." (Am. Compl. at 4.) Mr. Hanna asks this court to stay the domestic relations court proceedings, order Ms. Hanna to reconcile with him, permit his spouse to visit him in prison, $1,000,000.00 in compensatory damages, and $ 1,000,000.00 in punitive damages.

***Analysis***

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

## I. Younger Doctrine

As an initial matter, this court cannot stay the Knox County Domestic Relations Court Proceedings or issue an order requiring Mrs. Hanna to reconcile with her husband. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. See Younger v. Harris, 401 U.S. 37, 44-45 (1971). When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. Watts v. Burkhart, 854 F.2d 839, 844-48 (6th Cir.1988). If the state defendant files such a case, Younger abstention requires the federal court to defer to the state proceeding. Id; see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the State." Younger, 401 U.S. at 44.

All three factors supporting abstention are present in this case. The matters presented in the complaint are clearly the subject of a state domestic relations matter, which is of paramount state interest. See Firestone v. Cleveland Trust, 654 F.2d 1212, 1215 (6th Cir. 1981). Mr. Hanna has not given any reasonable indication that he cannot assert these claims in the state court. This court is unable to intervene in the domestic relations case and prevent the divorce from occurring.

## II. 42 U.S.C. § 1983

Mr. Hanna contends that the prison officials interfered with his right to maintain his marriage by restricting his wife from visiting him in prison. To the extent that he his claiming he has a right to remain married and that the defendants contributed to the factors which led to his divorce, his claim is without merit. There is no constitutional right to remain married, particularly when one party to the marriage is seeking to terminate it. As stated above, this court lacks jurisdiction to issue an order which requires the parties to remain married or which interferes with the domestic relations court proceedings. To the extent that he is claiming that the prison officials interfered with his right of association, it too must be dismissed.

### A. Right of Association

The Constitution protects "certain kinds of highly personal relationships." Roberts

v. United States Jaycees, 468 U.S. 609, 618, 619-620 (1984). Outside the prison context, the right to maintain certain familial relationships, including association among members of an immediate family is broadly construed. See Moore v. East Cleveland, 431 U.S. 494 (1977); Meyer v. Nebraska, 262 U.S. 390 (1923). Within the confines of prison, however, many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. Overton v. Bazzetta, 539 U.S. 126, 131-136 (2003). Indeed, the very object of imprisonment is confinement, and as such, an inmate does not retain rights inconsistent with that purpose. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977); Shaw v. Murphy, 532 U.S. 223, 229 (2001). Freedom of association is among the rights least compatible with incarceration. Overton, 539 U.S. at 131; see Jones, 433 U.S. at 125-126; Hewitt v. Helms, 459 U.S. 460 (1983). Some curtailment of that freedom must be expected in the prison context. There is no right to "unfettered visitation." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Bazetta v. McGinnis, 430 F.3d 795, 804 (6th Cir. 2005).

In this case, prison officials denied plaintiff visitation with his wife because Mrs. Hanna was, herself, serving the remainder of a criminal sentence. The Warden determined that she posed a threat to the security of the institution. This court must "accord substantial deference to the professional judgment of prison administrators who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton, 539 U.S. at 132; see Bazetta, 430 F.3d at 801; Pell v. Procunier, 417 U.S. 817, 822 (1974) at 826-827; Helms, 459 U.S. at 467; Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Jones, 433 U.S. at 126; Turner v. Safley, 482 U.S. 78, 85-89 (1987); Block v. Rutherford, 468 U.S. 576, 588 (1984); Bell v. Wolfish, 441 U.S. 520, 562 (1979). The burden, moreover, is not

on the State to justify the validity of a prison regulation but on the prisoner who challenges it. See Jones, 433 U.S. at 128. The regulation in question which prohibits prisoners from visiting with former inmates and persons on probation or parole, "promotes internal security, and is perhaps the most legitimate of penological goals." Overton, 539 U.S. at 133, see Pell, 417 U.S. at 823. The limitation to which Mr. Hanna objects is rationally related to this legitimate state interest. Overton, 539 U.S. at 133.

In addition, Mr. Hanna had alternative means of exercising his right of association. Alternative forms of communication, including letters and telephone calls, were still available to him. See Overton, 539 U.S. at 135; Turner, 482 U.S. at 90. The alternatives do not need to be ideal or even preferred by the inmate for the regulation to pass constitutional muster. Overton, 539 U.S. at 135. Moreover, although Mr. Hanna disputes the finding that his wife was a threat to the security to the institution, permitting visits with individuals already on probation for committing a crime would require the prison to incur an additional expense of adding security staff. Id. at 135; Turner, 482 U.S. at 90. There is no suggestion of an obvious reasonable accommodation that could be made that would resolve this problem. See Id. at 136; Turner, 482 U.S. at 90-91.

### B. Statute of Limitations

Even if Mr. Hanna had set forth a valid claim for violation of his right to freedom of association, he could not proceed with this action under 42 U.S.C. § 1983, against the prison officials. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. LRL Properties v. Portage Metro Housing Authority, 55 F. 3d 1097 (6th Cir. 1995). The conduct alleged in the complaint took place in 2004. This action was filed on July 18, 2007, well beyond the expiration of the two-year statute of limitations period. There would be no purpose in allowing this

matter to go forward in view of the fact that it is clearly time-barred. See Fraley v. Ohio Gallia County, No. 97-3564, 1998 WL 789385, at *1 (6th Cir., Oct. 30, 1998)(affirming sua sponte dismissal of pro se §1983 action filed after two year statute of limitations for bringing such an action had expired).

## C. Immunity

Mr. Hanna's claims against Judge Eyster and Ms. Hawkins would arguably be asserted within the statute of limitations period, but are nonetheless subject to dismissal. Judicial officers are absolutely immune from civil suits for money damages. Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. Barnes, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. Stump, 435 U.S. at 356-57. A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was in excess of his or her authority. Mr. Hanna contends that Judge Eyster issued orders which Mr. Hanna believes to jeopardize the strength of his case and his chances of reconciling with his estranged wife. He does not have recourse against the judge for damages under 42 U.S.C. §1983 for these actions.

Similarly, court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process. Foster

v. Walsh, 864 F.2d 416, 417 (6th Cir. 1988). Whether an act is judicial in character does not depend on whether it is discretionary. Id. Rather, immunity applies to all acts of auxiliary court personnel that are "basic and integral parts of the judicial function," unless those acts are done in the clear absence of all subject matter jurisdiction of the court. Mullis v. U.S. Bankruptcy Court, Dist of Nevada, 828 F.2d 1385, 1390 (9th Cir. 1987). Acts committed in error or in excess of jurisdiction will not abrogate immunity, even if it results in "grave procedural errors." Id. The acts of Ms. Hawkins about which plaintiff complains - docketing and disseminating the opinion of a judge- are all integral parts of the judicial process and within the subject matter jurisdiction of the domestic relations court. Sindram v. Suda, 986 F.2d 1459, 1461 (D.C. Cir. 1993)(citing the Sixth Circuit's decision in Foster).[2] Ms. Hawkins is entitled therefore to absolute immunity.

### III. 42 U.S.C. § 1985

Finally, Mr. Hanna's claim under 42 U.S.C. § 1985 must be dismissed. To establish a violation of § 1985, a plaintiff must allege that the defendants conspired together for the purpose of depriving the plaintiff of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory animus. Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999). As an initial matter, Mr. Hanna

---

[2] See Fish v. Murphy, No. 01-3601, 2001WL 1355611(6th Cir. Oct. 26, 2001)(finding the clerk of court was entitled to absolute immunity even though he stamped the wrong date on the document which resulted in the dismissal of an appeal); Harris v. Suter, No. 00-3309, 2001 WL 111586 (6th Cir. Feb. 1, 2001)(holding clerk was entitled to absolute immunity for actions associated with filing or failing to file a document); Burton v. Mortimer, No. 99-1956, 2000 WL 876517 (6th Cir. June 22, 2000)(finding the denial of free copies of the file and a delay in forwarding the record to the state court of appeals which results in an erroneous dismissal for lack of jurisdiction and are both quasi-judicial functions which entitle the clerk to absolute immunity); see also Foster, 864 F.2d at 417 (the act of issuing an order of a judge is a quasi-judicial function entitled to immunity).

fails to allege that he was denied equal protection of the law. In fact, he admits in his pleading that there are other similarly situated inmates who have their visitations restricted under this same regulation. Moreover, there are no facts alleged to suggest that any of the defendants conspired together or that their actions were in any way motivated by plaintiff's race. His claims under § 1985 are without merit and fail to state a claim upon which relief may be granted..

### *Conclusion*

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

October 9, 2007

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.